IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

LERNARD LAMONT DUNCAN,       )
                             )
        Plaintiff,           )
                             )
v.                           )        CASE NO. 1:08-CV-867-TMH
                             )              [WO]
                             )
OFFICER HAGLER, et al.,      )
                             )
        Defendants.          )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Lernard
LaMont Duncan ["Duncan"], a county inmate, against Don Hagler and James Soden,
correctional officers at the Houston County Jail, and Jason Smoak, a certified physician's
assistant employed by the jail.  In this complaint, Duncan asserts defendants Hagler and
Soden acted with deliberate indifference to his safety by failing to protect him from attack
by other inmates in September of 2008.  *Plaintiff's Complaint - Court Doc. No. 1* at 3.
Duncan further complains defendant Smoak denied him adequate medical treatment for the
injuries he suffered in this attack because Smoak refused to transfer him to a free-world
hospital for evaluation.  *Id.*  Duncan seeks declaratory relief and monetary damages for the
alleged violations of his constitutional rights.  *Id.* at 4.

The defendants filed a special report, answer and supporting evidentiary materials

addressing each of Duncan's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat this report as a motion for summary judgment.  *Order of January 15, 2009 - Court Doc. No. 21*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the report/motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of

3

professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Duncan is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant

of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting

the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil

6

case.  In this case, Duncan fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

### III.  DISCUSSION[2]

### A. Absolute Immunity

### A.  Suit Against Defendants in Their Official Capacities - Absolute Immunity

To the extent Duncan sues the defendants in their official capacities, they are immune from monetary damages.[3]  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).   "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has

---

[2]The evidentiary materials indicate the alleged constitutional violations made the basis of the instant complaint occurred after Duncan's incarceration pursuant to a sentence of confinement imposed by the Circuit Court of Houston County, Alabama for a possession of marijuana conviction.  Thus, the complaint relates to actions which occurred during Duncan's status as a convicted felon.  Regardless of Duncan's status in the jail, the applicable standard of review remains the same.  *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners....  However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

[3]Under all facets of Alabama law, a county sheriff, his jailers and medical staff act as state officers "when supervising inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Alabama*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Thus, the defendants are entitled to absolute immunity from any claims for monetary relief presented against them in their official capacities.  *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.  Deliberate Indifference to Safety

Duncan alleges defendants Hagler and Soden failed to protect him from attack by three other inmates on September 26, 2008.  *Plaintiff's Complaint - Court Doc. No. 1* at 2-3 ("I was sitting down by the shower next to my cell door when I saw c/o Hagler in the [control] booth and c/o Soden was taking up [meal trays when he approached] cell 17 and the door [to this cell] came[] open and 3 inmates attack me.").  The court construes this assertion as a claim of deliberate indifference to Duncan's safety arising under the Eighth Amendment.

Defendants Hagler and Soden adamantly deny they acted with either callous disregard or deliberate indifference to Duncan's safety. Specifically, Hagler and Soden assert they had no knowledge of any threat to Duncan's safety from the inmates responsible for the attack. *Defendants' Exhibit 1 (Affidavit of James Soden) - Court Doc. No. 20-1* at 2 ("On September 26, 2008, ... while I was picking up trays in N-pod after supper, three inmates from cell N17 ... bolted out of their cell, forced the door open all the way ... as they ran toward cell N11 and began to assault inmate Duncan. At that time, Corrections Officer Hagler was in the Control Booth and he called for 'all officers' to N-Pod.... I ran after the three inmates in an attempt to breakup the fight. Upon my arrival on the scene, the three inmates were all surrounding inmate Duncan. I shot my taser in the direction of the fight. Both of the taser probes penetrated [one of the attacker's] skin, at which point, the assault on inmate Duncan ended.... Inmate Duncan had a small cut over his right eye which was a little swollen. Inmate Duncan was taken to the medical clinic where he was examined, treated and returned to his cell...."); *Defendants' Exhibit 2 (Affidavit of Don W. Hagler) - Court Doc. No. 20-2* at 2 ("On September 26, 2008 ... Corrections Officer Soden was picking up trays in N-Pod after supper. [I opened the door from the control booth to cell N17] when I saw three inmates from [this] cell ... bolt out of their cell, force the door open all the way ... as they ran toward cell N11 and began to assault inmate Duncan."); *Defendants' Exhibit K - Court Doc. No. 20-9* at 7 (Although provided an opportunity to do so, Duncan failed to identify any other inmate as an enemy).

A correctional official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***."

10

*Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364

(11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have

perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491

(11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due

care for the prisoner's interests or safety....   It is ***obduracy and wantonness, not***

***inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel

and Unusual Punishments Clause, whether that conduct occurs in connection with

establishing conditions of confinement, supplying medical needs, or restoring official

control over a tumultuous cellblock."   *Whitley v. Albers*, 475 U.S. 312, 319 (1986)

(emphasis added).

> To be deliberately indifferent, Defendants must have been
> "subjectively aware of the substantial risk of serious harm in order to have
> had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38,
> 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321,
> 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a
> serious risk of harm and legal causation, the prison official must be aware of
> specific facts from which an inference could be drawn that a substantial risk
> of serious harm exists - and the prison official must also "draw that
> inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must

be a strong likelihood, rather than a mere possibility before a [correctional official's]

failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533,

1537 (11th Cir. 1990) (citations and internal quotations omitted).  As the foregoing makes

clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under

section 1983...." *Id*.

Pursuant to the aforementioned criteria, Duncan is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference claim. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same).

While it is unfortunate that Duncan suffered injuries to his right eye and left shoulder and exacerbated a back injury when three inmates assaulted him, the record is completely devoid of evidence indicating the attack about which he complains occurred due to any deliberate indifference or reckless disregard by defendants Hagler and Soden to Duncan's safety.  Duncan presents no evidence of an objectively substantial risk of serious harm nor is there any evidence demonstrating an actual, subjective awareness of a substantial risk of such harm by these defendants, each of which is a required element of his Eighth Amendment claim.  "Plaintiff has failed to establish that the Defendant[s] had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus,

Plaintiff has failed to establish a required element of this claim. When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established...." *Carter*, 352 F.3d at 1350 (footnote omitted). Consequently, summary judgment is due to be granted in favor of defendants Hagler and Soden on this claim.[4]

## C. Denial of Adequate Medical Treatment

Duncan contends defendant Smoak failed to provide him adequate medical treatment for the injuries suffered at the hands of the other inmates on September 26, 2008. In support of this claim Duncan alleges Smoak denied him "medical attention from the hospital." *Plaintiff's Complaint - Court Doc. No. 1* at 3. Defendant Smoak denies he acted with deliberate indifference to Duncan's injuries and, instead, maintains Duncan received appropriate treatment for his injuries. *Defendants' Exhibit 4 - Court Doc. No. 20-4* at 2-4.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing such treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not

---

[4]In his response to the defendants' report, Duncan alleges the attack occurred because Hagler and Soden failed to follow administrative rules and regulations applicable to the release of inmates from their cells. The alleged circumvention of a jail's administrative policies does not constitute a violation of an inmate's constitutional rights. *Sandin v. Conner*, 515 U.S. 472 (1995); *Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987). This claim therefore provides no basis for relief in this cause of action.

subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). "In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact prisoner desires a different mode of medical treatment does not amount to deliberate

indifference). A facility's medical care provider may be held liable under the Eighth Amendment only for acting with deliberate indifference to an inmate's health when the provider knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994).

The record demonstrates that immediately after the attack by the other inmates Duncan ambulated to the health care unit where a nurse evaluated his condition and provided treatment. The nurse noted a "small abrasion on [right] forehead [with no] active bleeding.... [Right] eye swollen - Ice to [right] eye. [Inmate complains of] pain in [left] shoulder.... TAO [triple antibiotic ointment] applied to abrasion on forehead. Covered by Band-Aid...." *Defendants' Exhibit A to the Affidavit of Jason Smoak (Houston County Jail Medical File of Lernard LaMont Duncan) - Court Doc. No. 20-5* at 27. The following day medical personnel again examined Duncan regarding the injuries he suffered in the attack by other inmates. *Id.* at 26. Defendant Smoak prescribed Ibuprofen for the complains of pain but Duncan refused this medication advising only that he preferred "to go to [a] hospital." *Id.*[5] On September 30, 2008, Duncan reported to the medical clinic and was thoroughly examined by defendant Smoak. *Id.* at 25. After this examination, Smoak

---

[5]In his response, Duncan concedes his refusal of the medication but maintains he did so because he "was allergic" - information Duncan acknowledges Smoak did not know at the time of ordering the medication nor did he provide such information to Smoak at that time. *Plaintiff's Response - Court Doc. No. 22* at 3. A thorough review of Duncan's medical records further establishes that Duncan repeatedly advised medical personnel he had no known drug allergies. *Defendants' Exhibit A to the Affidavit of Jason Smoak (Houston County Jail Medical File of Lernard LaMont Duncan) - Court Doc. No. 20-5* at 13, 22 and 25.

provided Duncan prescriptions for Flexeril and Naprosyn. *Id*.  Medical personnel examined Duncan on October 21, 2008, November 10, 2008 and November 20, 2008 regarding his complaints of back pain. *Id*. at 22-24.  Smoak renewed the Naprosyn prescription upon each of these visits to the medical clinic. *Id*.

The medical records filed herein demonstrate medical personnel consistently provided treatment to Duncan for his injuries in accordance with their assessment of his condition. *Id*. at 2-51.  The undisputed evidentiary materials before the court further demonstrate that the jail's medical staff routinely examined Duncan, thoroughly evaluated his complaints, prescribed various medications and provided treatment for his back in accordance with their professional judgment. *Id*.; *Defendant's Exhibit 4 (Affidavit of Jason Smoak) - Court Doc. No. 20-4* at 3-4.

The affidavit filed by defendant Smoak addresses the claim lodged against him, in pertinent part, as follows:

> In addition to funding three full time nurse positions; one Certified Medical Assistant ("CMA"); one full time Certified Physician's Assistant ("P.A."); a doctor contracted as the Clinic Medical Director and staff doctor; and, a registered supervising pharmacist for the provision of medical care to inmates such as the plaintiff, the [Houston] County Jail provides a general medical clinic for medical problems that may arise in the jail.  The medical clinic is held daily, Monday through Friday.  The jail also has a nurse or CMA on duty on Saturdays and Sundays.  The clinic is staffed by the staff physician and/or myself as the Certified Physician's Assistant under the supervision of the physician. The nurses or CMA are in the Pods each day passing out inmate medications as well.  Thus, inmates are given daily access to either the doctor, [physician's assistant], nurses or CMA services, and the general medical clinic as well as the hospital emergency room services, if

16

necessary.  Either I or the doctor are "on call" to the jail on a 24 hour a day, seven days a week, basis.

It is the policy of the Houston County Jail that all requests for medical treatment are forwarded to the jail's medical staff with the expectation that appropriate and necessary medical treatment will be provided to or obtained for the inmate.

The jail medical staff is committed to providing needed medical treatment to every inmate.  Based on my treatment of the plaintiff and my review of the plaintiff's jail medical file, the plaintiff was, during the period of time made the basis of Plaintiff's complaint, provided all necessary medical testing, treatment and care while in the Houston County Jail.  At all times alleged in Plaintiff's Complaint, he has been given and provided adequate and necessary medical treatment and has at all times relevant thereto been provided with all medically necessary medications.

Inmate Duncan's most recent incarceration in the Houston County Jail began on July 12, 2008.  From September, 2008, through November, 2008, Mr. Duncan was seen for treatment by Medical Clinic personnel at least six times.  All reasonable and necessary medical treatment has at all times been provided to inmate Duncan.  A summary of the medical treatment provided to the plaintiff [relevant to the claim presented in the instant complaint] is provided as follows:

Sept. 26, 2008:    Inmate Duncan was brought to the medical clinic after being involved in a fight.  Inmate Duncan stated that he was jumped by three other inmates.    Inmate Duncan complained of pain in his left shoulder and stated that he was kicked by other the inmates.
Upon physical examination of his head, a small abrasion on the right side of his forehead with zero active bleeding was noted.  Inmate Duncan's right eye was swollen.
Inmate Duncan's medical treatment plan was as follows:
1. Ice was given to inmate Duncan to place on his right eye.

2. Triple Antibiotic Ointment was applied to the abrasion on his forehead and covered same with band-aid.

Sept. 27, 2008:    Inmate Duncan was seen in the medical clinic regarding the injuries sustained during the fight with other inmates.
Inmate Duncan's medical treatment plan was as follows:
1. Ibuprofen 600 mg by mouth three times a day for ten days.
Note: Inmate Duncan refused the medication and stated that he wants to go to the hospital.

Sept. 30, 2008:    Inmate Duncan was seen in the medical clinic for follow up on back from fight.  Inmate Duncan was complaining of spine pain and stated that the pain was worse when he sits up and relieved by laying down.  Inmate Duncan stated that the pain was located on the bony protrusion of the cervical spine, middle of back and lower back.  Inmate Duncan stated that he had a back injury in [the] past and he was seen at Southern Bone and Joint.
Upon physical examination, inmate Duncan's pupils were equal round and reactive to light, his extra ocular motion were intact, Normocephalic atramatic sclera was clear.  There was zero ecchymosis (bruising) or swelling noted on inmate Duncan's back.

18

There was zero step off deformity positive abrasion noted at the C-7 vertebra, no muscle spasms were noted and inmate Duncan's patella (knee cap) reflexes were normal. My physical examination of inmate Duncan reported muscle skeletal pain secondary to altercation (lumbar strain) (cervical strain).

Inmate Duncan's medical treatment plan was as follows:

1. Flexeril 10mg by mouth twice a day for seven days.

2. Naprosyn 500mg by mouth twice a day for seven days.

3. Return to Clinic in three weeks.

4. I requested medical records be received from Southern Bone and Joint.

Oct. 21, 2008:   Inmate Duncan was seen in the medical clinic for follow up on back from fight. Inmate Duncan stated that his back pain was doing better but still present. Upon physical examination, inmate Duncan was under no apparent distress, there were no abnormalities noted on physical exam.

Inmate Duncan's medical treatment plan was as follows:

1. Naprosyn 500mg by mouth twice a day for thirty days.

2. Return to Clinic for follow up as needed.

Nov. 10, 2008:   Inmate Duncan was seen in the medical clinic for follow up on his

back from fight.  Inmate Duncan had complaints of back pain and reported that it was worse in the morning.  Inmate Duncan claimed that it takes him more than five minutes to get out of bed.  Inmate Duncan is currently on lock down. Inmate Duncan requested to go to [the] hospital for his back pain and reported an old injury for which he was seen at Southern Bone and Joint.

Upon physical examination, there was zero ecchymosis (bruising) or swelling noted on inmate Duncan's back. Diffuse subjective complaints of tenderness across lower back with minimal palpation.  Inmate Duncan walked to the exam room without difficulty.   His medical records from Southern Bone and Joint showed inmate Duncan with a lumbar strain in 2002.

Inmate Duncan's medical treatment plan was as follows:

1.  Continue Naprosyn as ordered.

2.  Inmate Duncan was advised to stay off of lock down.

Note: Inmate Duncan stated that if he does not get to go to [the] hospital he is going to file a law suit.

Nov. 20, 2008:    Inmate Duncan was seen in the medical clinic for follow up on his back from fight.  Inmate Duncan reported that his back is still hurting and that it has been hurting

since he was seen by Southern
Bone and Joint for lumbar strain in
2002.   According to Southern
Bone and Joint records, inmate
Duncan was seen once after he
jumped over a fence and fell and
he was diagnosed with a lumbar
strain.  Also according to Southern
Bone and Joint records, inmate
Duncan's lumbar strain was well
healed and inmate Duncan had not
been seen by Southern Bone and
Joint since then.  Inmate Duncan
denied pain radiating into lower
extremities and has not had any
loss of bowel or bladder control.
Upon physical examination, there
was no ecchymosis (bruising),
swelling, [or] muscle spasm [with]
diffuse subjective complaints [of]
tenderness noted to lower back.
No ataxia was noted and inmate
Duncan was able to sit in chair and
rise without difficulty.
Inmate   Duncan's   medical
treatment plan was as follows:
1.  One intramuscular injection of
Dexanethsue 8mg.
2. Continue Naprosyn 550mg by
mouth twice a day for ninety days.
3. Return to clinic as needed for
follow up.

*Defendants' Exhibit 4 (Affidavit of Jason Smoak) - Court Doc. No. 20-4* at 2-5.  Smoak's

synopsis of the treatment provided to Duncan is supported by the medical records filed in

this case and there is nothing before the court which undermines the validity of these

records.

Under the circumstances of this case, it is clear that the course of treatment undertaken by the jail's medical staff was neither grossly incompetent nor inadequate. Although Duncan asserts he should have been provided a different manner of treatment, i.e., Smoak should have referred him to a hospital for medical treatment, this assertion fails to establish deliberate indifference. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545 (whether medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Duncan received medical treatment for his injuries as dictated by objective evaluations of his condition. Based on well settled law as cited herein, Duncan's mere desire for a different mode of medical treatment does not amount to deliberate indifference. Duncan has failed to present any evidence which indicates defendant Smoak knew the manner in which he and other medical personnel treated Duncan's injuries created a substantial risk to his health and that with this knowledge

consciously disregarded such risk. The record is devoid of evidence, significantly probative or otherwise, showing that Smoak or any other health care provider acted with deliberate indifference to Duncan's injuries. Consequently, summary judgment is due to be granted in favor of defendant Smoak on this claim. *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before March 9, 2011 the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th day of February, 2011.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE